UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

GEORGE RATLEDGE,                           )
                                           )
            Plaintiff,                     )
                                           )        1:12-CV-402
v.                                         )
                                           )        Judge Curtis L. Collier
NORFOLK SOUTHERN RAILWAY CO.               )
and BULL MOOSE TUBE CO.,                   )
                                           )
            Defendants.                    )

# **M E M O R A N D U M**

Before the Court is Defendant Bull Moose Tube Company's ("Bull Moose") motion to dismiss for lack of jurisdiction (Court File No. 22). Plaintiff George Ratledge ("Plaintiff") responded to Bull Moose's motion (Court File No. 34), and Bull Moose replied to Plaintiff's response (Court File No. 38). Bull Moose argues the Court lacks personal jurisdiction over it because, although it maintains contacts with Tennessee, the injury in this case occurred outside the State of Tennessee. Bull Moose seeks dismissal on subject-matter jurisdiction grounds as well. Bull Moose also argues, for the first time in its reply brief, Plaintiff has failed to establish proper venue. For the following reasons, the Court concludes the requirements of personal jurisdiction and subject-matter jurisdiction have been met. Moreover, Bull Moose misreads the venue statute, and venue properly lies in the Eastern District of Tennessee. Accordingly, the Court will **DENY** Bull Moose's motion (Court File No. 22).

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Norfolk Southern Railway Company ("NSR") is a common carrier engaged in shipping by rail. NSR maintains a facility in Hamilton County, Tennessee called the DeButts Yard facility. Plaintiff was employed as a "carman" by NSR at the DeButts facility between 1971 and 2010.

On January 7, 2010, Plaintiff was sent to inspect a load of steel at a Trenton, Georgia facility operated by Bull Moose. Typically, employees would enter the Bull Moose facility through two large roll-up doors. On the day in question, however, the doors were closed due to cold weather. Plaintiff entered through a different door, on the side of the building. Plaintiff turned left after walking through the door and hit his head against a metal support beam. Although Plaintiff was wearing a hard hat, his head and neck were injured by the blow.

Plaintiff felt merely rattled at first and continued with his duties. By the following morning, Plaintiff's condition became more serious. He informed NSR Senior General Foreman Terry Sayers about the incident and requested the proper injury forms. Sayers informed Plaintiff NSR would fire Sayers as foreman if Plaintiff filled out the injury forms. He told Plaintiff to postpone reporting the injury in order to determine whether it might improve on its own. Plaintiff obliged, feeling he might be fired himself if he disobeyed.

However, by the following Monday, January 11, 2010, Plaintiff decided he could suffer no longer and confronted Sayers again. He was told to wait once more, and if he did decide to report the injury, to change the date of the injury to the report date, rather than January 7, 2010. On the same day, Plaintiff discussed the injury with NSR General Foreman Robert Steed, who stated he would discuss the situation with Sayers. Plaintiff continued to work in spite of the pain.

By Wednesday, January 13, 2010, the pain had become too severe to ignore, complete with numbness and tingling in his right arm, and Plaintiff told Sayers he must seek medical attention. Sayers notified NSR Division Manager of Mechanical Operations Kevin Krull. Plaintiff also finally filled out the injury forms, correctly listing January 7, 2010 as the date of injury. Plaintiff was then transported to Work Force Corporate Health Services where Michael Gaither, NSR's physician,

2

treated him. He assessed Plaintiff with (1) degenerative disc disease in the cervical spine; (2) right shoulder pain; (3) muscle spasm; and (4) head contusion questionable concussion. Gaither prescribed Naprosyn, Flexeril, Lortab, and a Computed Tomography ("CT") scan. He released Plaintiff to work with restrictions, including no pushing, no pulling, no lifting over fifteen pounds with his right arm, no lifting with outstretched right arm, and limiting use of his right arm.

After he returned from treatment, Krull, Sayers, Steed, and other NSR employees interviewed Plaintiff about the circumstances of his injury. Krull told Plaintiff NSR could not accommodate his restrictions, and he would be unable to return to work until cleared by NSR's Medical Department. The interviewers then initiated an investigation. They measured Plaintiff in full safety garb, including a hard hat and safety boots, and measured his height at 79.5 inches from the floor to the top of his hard hat.[1] They measured Plaintiff in a "slouched" position, approximating his height at the time he struck the support beam. When Krull, Sayers, and Steed visited the Bull Moose facility, they measured the distance between the floor and the support beam Plaintiff claimed to have struck. The top support beam was 74 inches from the floor, while the bottom support beam was 71.75 inches from the floor. They also noticed cobwebs on the support beam but did not find any white residue on Plaintiff's hard hat. Performing a crude experiment, they struck Krull's own hard hat against a similar beam, which resulted in some residue transference.

The cohort concluded Plaintiff could not have sustained his injury as he reported it to them during the interview. They decided to place Plaintiff "out of service" pending a formal disciplinary hearing. On January 15, 2010, Plaintiff received a charge letter with two charges: (1) failing to properly and timely report an injury in violation of "General Rule N"; and (2) falsification of an

---

[1] Without this gear, Plaintiff is 6' 4", or 76 inches tall.

injury. The late reporting charge was dropped after Krull discovered Sayers and Steed prevented Plaintiff from timely reporting his injury.

An investigative hearing was held on September 9, 2010, during which Plaintiff submitted the findings of a retained expert, Dr. Tyler Kress. He was not, however, represented by counsel. Although Plaintiff and his retained expert were denied access to the Bull Moose facility to conduct an independent investigation, Dr. Kress concluded Plaintiff's height decreased three inches during regular stride, which resulted in the lower part of his hard hat being 71 inches from the floor. This was roughly the height of the bottom support beam as measured by the investigators. Dr. Kress also noted Plaintiff may, as many do, slouch as he walks, in which case the effective height of the lower part of his hard hat would be less than 71 inches. Dr. Kress also concluded hard-hat impacts do not typically leave visible evidence due to the type of plastic used to produce them.

In spite of this report, the NSR investigation concluded Plaintiff falsified his injury. NSR terminated Plaintiff's employment on October 8, 2010. On November 30, 2010, Plaintiff's union representative appealed his dismissal to NSR's Director of Labor Relations, D.L. Kerby on the grounds the investigative hearing was not fair and impartial and violated Rule 29 of the Controlling Agreement. The appeal was denied on January 28, 2011. Plaintiff then sought relief from the Public Law Board, which concurred with the guilty decision on June 21, 2011, but found a permanent dismissal unwarranted in light of Plaintiff's extensive service. The Board ordered Plaintiff be reinstated with seniority intact, but did not award him payment for lost time. Plaintiff is, however, disabled from his normal duties.

Earlier, on March 17, 2010, Plaintiff filed a complaint with the Regional Administrator of Occupational Safety & Health Administration ("OSHA") pursuant to the FRSA, 49 U.S.C. § 20109,

4

and the DOL's implementing regulations, 29 C.F.R. Part 1982. He amended his complaint on October 13, 2010, in which he alleged NSR retaliated against him and interfered with his medical treatment. On July 18, 2012, the OSHA Regional Administrator found in Plaintiff's favor, and awarded him compensatory damages, punitive damages, attorney's fees, and other relief. On August 8, 2012, NSR objected to these findings and requested a hearing before the Office of the Administrative Law Judges of the DOL. Plaintiff notified the DOL on October 23, 2012 he intended to file suit in U.S. District Court.

Also, after receiving the charge letter but before the September hearing, Plaintiff filed a complaint with the U.S. Department of Transportation, Federal Railroad Administration ("FRA"). On November 29, 2010, the FRA informed Plaintiff NSR violated federal regulations when it "harassed and intimidated" him between January 7 and January 13, 2010. *See* 49 C.F.R. § 225.33.[2] The FRA also concluded NRS violated regulations when it did not allow Plaintiff to file an initial injury report, *see id.*, and when it did not document the injury on its required monthly report, *see* 49 C.F.R. § 225.11.

Plaintiff filed a personal injury suit against NSR and Bull Moose in the Circuit Court of Hamilton County on August 26, 2010, asserting some of the claims alleged in this case. He voluntarily dismissed that action without prejudice on November 27, 2012. Shortly thereafter, on December 26, 2012, Plaintiff filed the instant action. Plaintiff brings four claims: (1) negligence against NSR pursuant to 45 U.S.C. § 51; (2) retaliation by NSR in violation of the FRSA, 49 U.S.C.

---

[2] Plaintiff lists more specific paragraphs in his complaint but the subparagraphs he specifies do not correspond precisely to the regulation as it exists now or as it existed in 2010. The Court presumes he intended to list 49 C.F.R. § 225.33*(a)*(1), rather than § 225.33(1) and § 225.33(i). Regardless, which regulations NSR was alleged to have violated by the FRA is immaterial to resolution of the instant motion.

§ 20109(a), and its implementing regulations; (3) interference with treatment against NSR in violation of the FRSA, 49 U.S.C. § 20109(c), and its implementing regulations; and (4) negligence against Bull Moose pursuant to state common law or statutory law.

Bull Moose timely filed the instant motion to dismiss for lack of jurisdiction.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Bull Moose argues subject-matter jurisdiction is inappropriate under the Federal Employers' Liability Act, 45 U.S.C. § 56, and the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109(d)(3) for Count Four because Bull Moose was never Plaintiff's employer. However, Plaintiff does not assert jurisdiction pursuant to these statutes with respect to Bull Moose. Admittedly, as noted in the Court's order ruling on NSR's motion to dismiss Count Two, Plaintiff mistakenly lists the FRSA as a basis for federal question jurisdiction in regard to Count Four, the count asserted against Bull Moose. However, the listed counts appear to be a typographical error, as the complaint states 28 U.S.C. § 1331 is an appropriate basis of jurisdiction "because Counts 3 and 4 *asserted against NS[R]* are authorized to be filed in this Court by the [FRSA]" (Court File No. 1, Complaint, p. 14 ¶ 4(2)) (emphasis added). Count Four is, however, asserted against Bull Moose, not NSR. Moreover, Plaintiff alleges diversity of citizenship as a basis of jurisdiction in the next paragraph "and/or" supplemental jurisdiction with respect to Count Four. The typographical error indicating the FRSA as a basis of subject-matter jurisdiction is not dispositive of this claim. Plaintiff successfully prevented such a result when he listed four separate bases for jurisdiction conjunctively with "and/or." Bull Moose does not dispute complete diversity exists in this case and the amount in controversy exceeds $75,000. Accordingly, the Court has subject-matter jurisdiction over

6

Plaintiff's claim against Bull Moose pursuant to 28 U.S.C. § 1332.

**B. Personal Jurisdiction**

In addition to jurisdiction over the dispute itself, a court must have jurisdiction over the parties to that dispute. Jurisdiction over the parties, known as personal jurisdiction, is not at issue where all parties willingly submit to a court's authority to hear a case. Where, as here, defendants[3] in a case hale from out of state and dispute the court's jurisdiction over them, the court can only exercise personal jurisdiction over those out-of-state defendants if they maintain "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Thus, courts consider whether the exercise of personal jurisdiction over parties is consistent with the Due Process Clause in the United States Constitution.[4]

Under federal due process analysis, there are two bases of personal jurisdiction: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum

---

[3] "Practically speaking, plaintiffs always concede personal jurisdiction, so the inquiry is typically restricted to defendants; because defendants who reside in the forum state will always be subject to the personal jurisdiction of the court, the inquiry is in most cases further restricted to non-resident defendants." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

[4] A court must also have jurisdiction pursuant to the state's long-arm statute. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) . "Tennessee's long-arm statute[,Tenn. Code Ann. § 20-2-214(a)(6),] has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)). Accordingly, "the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (internal quotation marks and citation omitted).

state." *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012). Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has defined a precise test for courts to follow when determining whether the exercise of general jurisdiction is proper. *Id.* The touchstone for general jurisdiction is whether an out-of-state defendant's contacts with the forum state are "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 414 n.9 (1984), and if so, general jurisdiction is proper even if the underlying action "is unrelated to the defendant's contacts with the state," *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citations omitted).

By contrast, a three-factor test exists for determining whether a court properly exercises specific personal jurisdiction over an out-of-state defendant.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).[5] The "purposeful availment" requirement–often referred to as the *sine qua non* of personal jurisdiction–"ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third person." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal citations and quotation marks omitted). Although the out-of-

---

[5] After first announcing this test in 1968, the Sixth Circuit has continued to rely on the same formulation. *See Conn*, 667 F.3d at 713 (quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)).

8

state defendant's physical presence in the forum state is not required, specific personal jurisdiction is only proper where the defendant himself has created a substantial connection with the forum state. *Burger King*, 471 U.S. at 476.

On the second prong, a court must determine whether a plaintiff's cause of action arises from defendant's contacts with the forum state. In making this determination, a court assesses "whether the causes of action were 'made possible by' or 'lie in the wake of' defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (internal citations omitted). Finally, if the court finds these first two prongs satisfied, it must decide whether the exercise of jurisdiction over the defendant is reasonable. *S. Mach.*, 401 F.2d at 381. In considering whether exercise of personal jurisdiction is reasonable under this third prong, courts look to four factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

Whether relying on either the general or the specific theory of personal jurisdiction, the plaintiff bears the burden of establishing "specific facts" demonstrating the exercise of personal jurisdiction is proper, and the plaintiff must establish such facts by a preponderance of the evidence. *Conn*, 667 F.3d at 711. Where, as here, the court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(2) without the aid of an evidentiary hearing, the plaintiff need only make a prima facie case the court has personal jurisdiction. *Id.* Finally, given the procedural posture of the case, the Court must view the pleadings in the light most favorable to Plaintiff, but can also consider Defendants' undisputed factual assertions. *Id.*

Plaintiff argues the Court has both general and specific personal jurisdiction over Bull

9

Moose. Because the Court finds the narrower ground of jurisdiction appropriate, it will not consider whether Bull Moose's contacts are so continuous and systematic as to establish general jurisdiction. Plaintiff has established the first prong of the three-part test to establish specific personal jurisdiction: that "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach.*, 401 F.2d at 381. The complaint's allegations note Bull Moose operates a manufacturing facility in Trenton, Georgia, twenty miles from downtown Chattanooga, Tennessee. Bull Moose engages in business with NSR, whose facility is in Tennessee, which transports its product throughout the United States "a substantial majority of which is shipped through Tennessee" (Court File No. 1, Complaint, p. 3 ¶ 8). As a result of shipping and selling product through and in Tennessee, Bull Moose averages slightly less than $6,000,000 a year in Tennessee sales. Bull Moose also maintains offices in Tennessee with at least three Tennessee employees, including a sales agent. Due to NSR's proximity to Bull Moose's Trenton facility, NSR employees are often sent to the facility at Bull Moose's request to inspect train cars of Bull Moose's product that will be shipped by NSR. Between January 2007 and October 2012, such inspections occurred 155 times. Plaintiff's injury in this case occurred as a result of just such a request.

This activity is sufficient to satisfy the "purposeful availment" prong. Bull Moose has engaged in substantial commercial activity in Tennessee for decades, maintains offices here, and receives a large sum of proceeds from sales in the state. More important for the instant motion, Bull Moose makes use of NSR's Tennessee facility on a routine basis, often requesting Tennessee citizens come to Bull Moose's Georgia facility to inspect cars, many of which will follow those citizens back into Tennessee. Bull Moose was on notice of possible suit in Tennessee arising from

10

these contacts. In fact, Bull Moose admits it has significant contacts with the state that generally subject it to suit when the cause of action arises from those contacts

Thus, Bull Moose's primary argument is Plaintiff fails to establish the second prong. Plaintiff must show by a preponderance of the evidence that the cause of action "arises from" Defendants' actions in Tennessee. *S. Mach.*, 401 F.2d at 381. Although the Sixth Circuit has formulated the test for this prong in different ways, *see Air Prods.*, 503 F.3d at 553, courts should consider whether a plaintiff's cause of action arises from "Defendants' contacts with the forum state as well as actions directed at the forum state," *id.* Bull Moose argues Plaintiff fails in this regard because the injury occurred in Georgia. Pointing to Tenn. Code Ann. § 20-2-201, Bull Moose argues Plaintiff may not hale it into a Tennessee court for an injury occurring outside the state. Section 20-2-201 provides in part,

> Any corporation claiming existence under the laws of the United States or any other state or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws of this state liable to be sued, so far as relates to any transaction had, in whole or in part, within this state or any cause of action arising here, but not otherwise.

Bull Moose notes the cause of action does not "arise" in Tennessee because the negligence occurred, if at all, in Georgia, as did the injury. Further, Bull Moose argues the injury did not relate to any transaction in Tennessee, and accordingly suit in Tennessee courts is inappropriate.

However, Tennessee courts have interpreted § 20-2-201 to be merely "a procedural alternative to Tennessee Rule of Civil Procedure 4.04(4),"[6] not a jurisdictional limitation. *Mitchell*

---

[6] "Service shall be made . . . [u]pon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on

11

*v. White Motor Credit Corp.*, 627 F. Supp. 1241, 1246 (M.D. Tenn. 1986); *see also Gallaher v. Chemical Leaman Tank Lines, Inc.*, 367 F. Supp. 1063, 1065 (E.D. Tenn. 1973) ("This Court is of the opinion that the Tennessee Supreme Court, when faced with the instant issue, will allow its citizens to sue foreign corporations doing business within the State for causes of action arising elsewhere."). Indeed, courts have concluded the Tennessee legislature intended the reach of its long-arm statute to extend as far as the Due Process Clause of the United States Constitution, as demonstrated by Tenn. Code Ann. § 20-2-214(a)(6). *Mitchell*, 627 F. Supp. at 1246; *see also Intera Corp.*, 428 F.3d at 616 ("Tennessee's long-arm statute[,Tenn. Code Ann. § 20-2-214(a)(6),] has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'"). Accordingly, § 20-2-201 is no bar to jurisdiction in Tennessee.

Bull Moose also points to Tennessee's venue statute, Tenn. Code Ann. § 20-4-101, which requires any "transitory action" be brought in the county where the action arose or where the defendant resides. However, the federal venue statute, 28 U.S.C. § 1391, governs this case. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988) (holding federal law governs venue disputes under 28 U.S.C. § 1404(a)); *see also Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 535 (6th Cir. 2002) (holding federal law governs venue in removal cases); *Miller v. Davis*, 507 F.2d 308, 316 (6th Cir. 1974) ("State law does not control the venue of federal courts."). Perhaps realizing this, Bull Moose argues for the first time in its reply brief venue is improper under § 1391(b), which

---

behalf of the corporation." Bull Moose does not assert insufficient service under Fed. R. Civ. P. 12(b)(4).

provides,

> A civil action may be brought in--
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Bull Moose argues it does not satisfy subsection (1), and accordingly Plaintiff's action must be brought under subsection (2), which in this case would require this suit be filed in the Northern District of Georgia. However, under § 1391(c),

> an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.

28 U.S.C. § 1391(c)(2). Accordingly, Bull Moose's venue argument must fail.[7] Because the Court concludes personal jurisdiction is appropriate in this case based on Bull Moose's contacts with Tennessee, Bull Moose "resides" in Tennessee, as that term is defined in § 1391(c). Thus, venue is appropriate in the Eastern District of Tennessee.

Further, injury need not always occur in the state exercising jurisdiction, particularly where the defendant is a corporation. For instance, in *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir.

---

[7] The Court also notes Bull Moose may have waived venue. In its initial Rule 12 motion, Bull Moose does cite the Tennessee venue statute, but only in support of its argument the Court lacks jurisdiction, not in support of an improper venue argument. Such an omission would constitute waiver of the issue. Fed. R. Civ. P. 12(h)(1). The Court need not decide whether Bull Moose successfully raised this issue because it finds venue is otherwise proper.

13

1991), the Sixth Circuit rejected an argument similar to Bull Moose's argument in this case.[8] The plaintiff, Theunissen, was a truck driver in Michigan who traveled to Canada to pick up a load of lumber. While he was loading his truck, his hand was crushed by a machine. He filed suit in the Eastern District of Michigan against Matthews, sole proprietor of the company that owned the transfer location where Theunissen injured his hand. Matthews argued the court lacked personal jurisdiction over him because he was a citizen of Canada, his business was located wholly within Canada, he had no bank accounts or property in the United States, he did not advertise in the United States, and he conducted no business in the United States. Theunissen, however, stated he picked up lumber multiple times before his injury for delivery to Matthews' customers in Michigan. He also alleged, during the prior two years, his company's employees retrieved 186 loads of lumber at Matthews' request to deliver in the United States, including Michigan. Matthews noted, however, he was merely a storage and reloading business, and the actual purchases were being made from wholesalers. The district court held it did not have personal jurisdiction over Matthews and dismissed the case.

The Sixth Circuit reversed. The court first noted plaintiffs typically argue, where "the action arises from conduct of the non-resident that physically injures the plaintiff outside the forum," that

---

[8] The Court notes, on remand, the district court again found it lacked personal jurisdiction over the defendant and that finding was affirmed on subsequent appeal. *See Theunissen v. Matthews*, No. 92–1271, 992 F.2d 1217, 1993 WL 100060 (6th Cir. Apr.5, 1993). However, whereas the district court concluded Matthews maintained insufficient contacts, the Sixth Circuit affirmed on narrower grounds. On remand the district court determined Theunissen's employer and Matthews did not have a contractual relationship. The Sixth Circuit concluded Theunissen failed to establish the claim arose from the "transaction of any business in [Michigan]" or out of a "contract for services to be rendered or materials to be furnished in the state" as required by the state's long arm statute. Here, on the other hand, Tennessee's long arm statute extends to the extent of due process. Moreover, a direct relationship between Plaintiff's employer and Bull Moose does exist in this case.

14

"the non-resident defendant has caused consequences in the forum in the form of the injury itself and related medical treatment and expenses." *Id.* at 1460. Both Michigan and federal courts, however, "have uniformly rejected this argument," because "the 'consequence' is the tort claim itself and it must arise within Michigan as a result of the defendant's territorial action: where the injury occurs outside the state, the cause of action–the consequence–does also." *Id.* But the court made the following observation, which controls disposition of Bull Moose's motion here:

> However, these cases distinguish instances, also present here, where jurisdiction is premised on transacting business noting that in such circumstances "the non-resident . . . usually can be said to be purposefully availing himself . . . of the privilege of conducting business in Michigan." *Clavenna*[*v. Holsey*,] 265 N.W.2d 378, 379 (1978). Where the defendant has undertaken such contacts, he may reasonably foresee being haled into the forum to defend himself. This is particularly so when the plaintiff's injury, although a "consequence" occurring outside the forum, is also a consequence of the defendant's business transactions in the forum.
> Assuming as we must that Theunissen's allegations are true, Matthews has maintained a residence in Michigan and contracted with common carriers and other firms. These allegations alone might suffice to establish purposeful availment. We believe the causal nexus between the business contacts and Appellant's injury only serves to reinforce this conclusion. We see no reason why the mere fact that Appellant sustained his injury across the border in Canada should disturb this finding.
> The *Southern Machine* test next requires that the cause of action arise from the defendant's forum activities. The foregoing discussion amply illustrates that this requirement is also met. Appellant's cause of action-his injured hand-resulted from the conduct of Matthews' employee while Appellant was present at his place of business pursuant to what Appellant alleges was a contract for carriage that Matthews had executed with Direct Transit. Thus, but for Matthews' alleged business contacts with his employer, Theunissen would have sustained no injury.

*Id.* at 1460-61.

The Court sees little distinction between the facts of *Theunissen* and the facts here. In fact, the primary distinction–defendant here is a United States corporation, whereas the defendant in Theunissen was a foreign national–actually makes the exercise of personal jurisdiction more reasonable. Bull Moose, as the Court concluded above, purposefully availed itself of the privilege

15

of doing business in Tennessee through its business dealings with NSR, which have resulted in decades of shipments through Tennessee and millions of dollars in business a year. Plaintiff in this case would not have been injured but for Bull Moose's business contacts with NSR. He visited Bull Moose's facility, according to his complaint, after being requested to do so by Bull Moose to inspect NSR's train cars containing Bull Moose's product. During the course of this visit, he suffered physical injury. Just as the "mere fact" Theunissen's injury occurred in Canada did not alter the *Theunissen* court's personal jurisdiction finding, the fact the injury in this case occurred twenty minutes over the Tennessee–Georgia border does not preclude jurisdiction.

Additionally, Bull Moose's offered cases do not compel an alternative result; in fact, they support it. Bull Moose cites *Davenport v. State Farm Mut. Auto. Ins. Co.*, 756 S.W.2d 678 (Tenn. 1988) and *Williams v. Williams*, 621 S.W.2d 567 (Tenn. 1981) for the proposition jurisdiction will not lie in Tennessee unless the injury occurred within its borders. However, *Davenport* hardly stands for that proposition at all. Rather, *Davenport* considered the extent to which Tenn. Code Ann. § 20-2-201 "applies to foreign corporations that have qualified with the Secretary of State and appointed a registered agent for service of process in this State, or applies only to foreign corporations that are *found* to be doing business in Tennessee but have not qualified or appointed an agent for service of process in this State." *Davenport*, 756 S.W.2d at 678. The court concluded the latter was the case.

In order to make this determination, the court considered the history of § 20-2-201, beginning in the mid-19th century. The court reviewed a number of cases since the section's enactment (in a precursor version to the current version) concluding it is not a limitation on jurisdiction for foreign corporations with an office or agent in Tennessee, but applies only to service

16

of process on traveling agents. Subsequent to those decisions, a handful of Tennessee courts concluded § 20-2-101 "governed the subject matter jurisdiction of Tennessee courts and provided a subject matter limitation upon actions against all foreign corporations whether qualified with duly appointed registered agents or not." *Davenport*, 756 S.W.2d at 683. One such case identified in *Davenport* is the other case offered by Bull Moose, *Williams v. Williams*, 621 S.W.2d 567 (Tenn. Ct. App. 1981). Considering these cases, the court concluded they erroneously interpreted the statute.

> Neither the *Delaney* court, the *Gillis* court nor the *Williams* court advanced any reason for overruling the cases beginning with *Telephone Co. v. Turner*, *supra* that we have cited herein. We think that *Turner* and its progeny correctly interpreted and applied the Act of 1887, chapter 226 and overrule the cases holding that T.C.A. § 20–2–201 limits *in personam* jurisdiction of foreign corporations qualified to do business and having a duly appointed agent in this State, to causes of action arising in this State and transactions had, in whole or in part, within this State. It is patently obvious that the holding of *Gillis* created the anomalous situation of limiting jurisdiction over foreign corporations qualified to do business and with registered agents in Tennessee, to actions and transactions arising within Tennessee, while T.C.A. § 20–2–214(6) in the same chapter and part of the Code grants jurisdiction to the outer limits of due process over foreign corporations having no office, qualification or agent in Tennessee.
> We conclude that T.C.A. § 20–2–201 has no application to foreign corporations that have qualified to do business and designated a resident agent, in Tennessee. Thus, the impediment to subject matter jurisdiction posed by that statute and relied upon by defendant in this case, is not applicable here, as defendant is qualified to do business in this State. Subject matter jurisdiction exists in this case by virtue of the principle enunciated in *Alwood*, and defendant's dealings with plaintiff in this state giving rise to a cause of action in Tennessee.

*Id.* at 684. The court then went further and concluded, as the Court noted above, that later additions to Tennessee's long arm statute extended the State's jurisdictional reach to the full extent of the Due Process Clause.

> Of significance to this lawsuit, T.C.A. § 20–2–201 is the first section in part two of the chapter on process which is entitled "LONG ARM STATUTES". That positioning is appropriate because the 1887 Act was the first long arm statute enacted

17

> by the Tennessee Legislature. The principal object and use of long arm statutes is to confer jurisdiction upon state courts of foreign corporations found to be doing business within the State without having qualified and appointed a resident agent.
>     A comparison of T.C.A. § 20–2–201 with T.C.A. § 20–2–214, the long arm statute first enacted by Public Acts of 1965, chapter 67, reveals that subsections (1)–(5) of the latter statute have the same application to the activities of foreign corporations in Tennessee as does T.C.A. § 20–2–201. In 1972, however, the legislature added subsection (6), to wit: "Any basis not inconsistent with the constitution of this state or of the United States." That subsection expanded the jurisdiction of Tennessee courts to the full extent permitted by due process. *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985).
>     The addition of subsection (6) resulted in an irreconcilable conflict with the phrase "but not otherwise" which limited the jurisdiction conferred by T.C.A. § 20–2–201. In these circumstances, T.C.A. § 20–2–214, the later-enacted section, has repealed by implication T.C.A. § 20–2–201. *See Jenkins v. Loudon County*, 736 S.W.2d 603 (Tenn.1987); *State Department of Revenue v. Moore*, 722 S.W.2d 367 (Tenn.1986); *Oliver v. King*, 612 S.W.2d 152 (Tenn.1981).

*Davenport*, 756 S.W.2d at 684-85. Not only does *Davenport* stand for the opposite proposition from that asserted by Bull Moose, it explicitly overruled the proposition in *Williams* on which Bull Moose relies. These decisions actually provide the Court significant support for, indeed compel, rejecting Bull Moose's motion.

Because the Court concludes the first two prongs of the specific jurisdiction inquiry are satisfied, it must consider the following factors to determine the reasonableness of exercising jurisdiction: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618. The Court concludes these factors weigh in favor of maintaining jurisdiction.

First, although Bull Moose is a Missouri corporation, it operates a facility just twenty minutes from downtown Chattanooga, Tennessee, where this court sits. The Court presumes most if not all the relevant witnesses and evidence will be within that vicinity. Thus, the burden on Bull

18

Moose to defend in this district is slight. In fact, were the Court to dismiss this claim and Plaintiff refiled in the Northern District of Georgia, the action would lie in the Rome Division of the Northern District, where court is held in Rome, Georgia. 28 U.S.C. § 90(a)(3). Rome is an approximately sixty-five- to seventy-mile drive from Trenton, as opposed to the approximately twenty-mile distance between Chattanooga and Trenton.[9] The Court concludes Bull Moose suffers little if any burden by defending in this court. *See Theunissen*, 935 F.2d at 1462 ("Windsor, Ontario is only approximately ten miles from Detroit."). Second, Georgia has an interest in the resolution of cases involving injuries that occur within its borders. However, there is no reason federal courts in Tennessee cannot effectively accord relief to plaintiffs and ensure the rights of defendants. Third, Plaintiff has a strong interest in seeking relief in this court as a citizen of Tennessee. Tennessee also has a strong interest in providing a forum for its citizens to resolve disputes as well as regulating the conduct of a business that frequently sends products through and to Tennessee, and deals with Tennessee companies and residents. *See id.* ("Michigan has interests in providing a forum for him to resolve that dispute as well as in regulating the conduct of foreign businesses trading in Michigan through the busy corridor between Detroit and Windsor."). Finally, perhaps the only other state with an interest in this case is Missouri. However, the most efficient resolution of this controversy is in a court nearest the site of the injury, which is this court. Accordingly, the Court concludes exercising personal jurisdiction over Bull Moose is reasonable.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Bull Moose's motion to dismiss (Court File

---

[9] "[A] District Court may take judicial notice of established geographical facts." *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964); *see also Pahls v. Thomas*, – F.3d –, Nos. 11-2055, 11-2059, 2013 WL 2398559, at *1 n.1 (10th Cir. June 4, 2013).

Case 1:12-cv-00402-CLC-WBC   Document 51   Filed 07/25/13   Page 19 of 20   PageID #: 620

No. 22).

An order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**